# UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                                                            (973) 645-4693
 BANKRUPTCY JUDGE                                                                              Fax: (973) 645-2606

**NOT FOR PUBLICATION**

January 17, 2007

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **JAN. 17, 2007**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY:  s/ Ronnie Plasner, DEPUTY

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Hellring, Lindeman, Goldstein & Siegal, LLP
Richard B. Honig, Esq.
One Gateway Center
Newark, New Jersey 07102
*Counsel for Defendant, Jeffrey Reckling*

Becker Meisel, LLC
Stacey L. Meisel, Esq.
Linda R. Brower, Esq.
Ben H. Becker, Esq.
Eisenhower Plaza II
354 Eisenhower Parkway, Suite 2800
Livingston, New Jersey 07039
*Counsel for Michael I. Okechuku,*
*Chapter 7 Trustee for North East Communications, Inc.*

Re:     *Michael I. Okechuku, Chapter 7 Trustee for North*
        *East Communications, Inc. v. Jeffrey Reckling*
        **Adv. No.: 05-1902 (DHS)**

Page 2
January 17, 2007

Dear Counsel:

On or about May 26, 2006, Jeffrey Reckling (hereinafter "Defendant") filed a motion to reopen the instant adversary proceeding as well as vacate the entries of default and default judgment against him. The Defendant argues in the alternative that the default judgment is: (i) void pursuant to Federal Rule of Civil Procedure 60(b)(4) as he was not properly served with process as required by Federal Rule of Bankruptcy Procedure 7004, or (ii) voidable on the grounds of excusable neglect pursuant to Federal Rule of Civil Procedure 60(b)(1).

Opposition to the motion was filed on July 5, 2006 by Michael I. Okechuku (hereinafter "Trustee"), as Chapter 7 Trustee for North East Communications, Inc. (hereinafter "Debtor") in the global bankruptcy case and as Plaintiff in the instant adversary proceeding. The Trustee argues that the entry of default judgment is not void because proper substituted service of process was propounded upon Robert A. Drexel, Esq. In addition, the Trustee argues that the default judgment is not voidable under Federal Rule of Civil Procedure 60(b)(1) because the Defendant fails to show either excusable neglect or a meritorious defense. Additional responsive papers were filed by the Defendant and the Trustee supporting their original arguments, on July 10, 2006 and July 18, 2006, respectively.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F) and (H). Venue is proper under 28 U.S.C. §§ 1408 and 1409. For the reasons that follow, the Defendant's motion is denied.

*Statement of Facts:*

On June 2, 2003, the Debtor filed a voluntary Chapter 7 bankruptcy petition. On or about June 1, 2005, the Trustee filed the instant adversary complaint against the Defendant seeking avoidance and turnover of the proceeds of two loans received from the Debtor. The loans are reflected in the Debtor's financial statements as "Other Current Assets - 1300 - Officer Loan - Jeffrey Reckling - $13,650.00" and "Other Current Assets - 1300 - Officer Loan - Jeffrey Reckling - $34,080.69." *Certification of Stacey L. Meisel, Esq. in Support of the Trustee's Opposition to the Defendant's Motion to Reopen the Case and Vacate Default Judgment*, Exhibits L-M (hereinafter "*Meisel Cert. I*"). The Defendant is a principal of the Debtor. *Certification of Robert A. Drexel, Esq. in Support of the Defendant's Motion to Reopen the Case and Vacate Default Judgment*, p. 2 (hereinafter "*Drexel Cert.*").

Mr. Drexel, counsel for the Debtor, "agreed to appear" on behalf of the Defendant in a Rule 2004 examination conducted on September 27, 2004. *Id.* In response to inquiry, the Defendant stated he would investigate the alleged loans. *Id.* at 2-3. Mr. Drexel represents that he spoke to the

Page 3
January 17, 2007

Debtor's accountants on October 7, 2004 and explains that the "loans were not made to Reckling . . . by the [Debtor], rather, these entries were for business purposes, in part to enhance company value by showing a loan receivable asset." *Id.* at 3.

At a holiday party in December of 2004, Mr. Drexel claims the Trustee's counsel allegedly stated that the Trustee would "abandon the claims against Reckling." *Id.* at 4. In stark contrast, the Trustee's counsel alleges that she informed Mr. Drexel "that the Chapter 7 Trustee would consider not pursuing claims to avoid and recover the amount of loans made by North East to Reckling only after Mr. Reckling submitted financial information showing his financial wherewithal to pay a judgment. . . ." *Certification of Stacy L. Meisel, Esq. in Further Support of the Trustee's Opposition to the Defendant's Motion to Reopen the Case and Vacate Default Judgment*, pp. 2-3 (hereinafter "*Meisel Cert. II*"). In a later conversation with Mr. Drexel, the Trustee's counsel again asserted the same caveat. *Id.* at 3.

During this time, Mr. Drexel also endeavored to protect the Defendant's interests in another ongoing bankruptcy proceeding. On September 19, 2002, Giant Ventures LLC d/b/a Klear Wireless PCS (hereinafter "Giant Ventures") filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California. *Certification of Linda R. Brower, Esq. in Support of the Trustee's Opposition to the Defendant's Motion to Reopen the Case and Vacate Default Judgment*, Exhibit C. Within that case, Karen Sue Naylor, as Chapter 7 Trustee for Giant Ventures, filed an adversary complaint against the Defendant. *Id.* at Exhibit A. In two letters dated June 20, 2003 and April 8, 2004, Mr. Drexel negotiated a consensual extension of the time to answer the adversary complaint and attempted to resolve the claims that Karen Sue Taylor raised against Jeffrey Reckling. *Declaration of Linda T. Bui, Esq. in Support of the Trustee's Opposition to the Defendant's Motion to Reopen the Case and Vacate Default Judgment*, Exhibits A-B.

By letter dated December 23, 2004, Mr. Drexel informed the Defendant that the claims against him in the Giant Ventures and the instant case were going to be dismissed or abandoned. *Drexel Cert.*, Exhibit B. Mr. Drexel also stated that he would "retain $2,500.00 against fees and expenses in the Giant Ventures case and in the Northeast Communications case. . . ." *Id.*

By letter addressed to Mr. Drexel dated March 30, 2005, the Trustee's counsel again requested that the Defendant produce financial records. *Meisel Cert. I*, Exhibit C. In response to that letter, Mr. Drexel spoke to the Trustee's counsel and informed her that the Defendant could not afford certified financial statements. The Trustee's counsel agreed to accept "financial statements of some kind" and to later determine their adequacy for abandoning the Trustee's claims. *Meisel Cert. II*, pp. 3-4.

In a June 3, 2005 conversation, Mr. Drexel agreed to accept service on behalf of the Defendant in response to the Trustee's counsel's request for the same. *Meisel Cert. I*, p. 2, Exhibit A.; *Drexel Cert.*, p. 5. It is undisputed that the summons and complaint were personally

Page 4
January 17, 2007

served upon and signed for by Mr. Drexel's law office on June 10, 2005. *Meisel Cert. I*, Exhibit F; *Drexel Cert.*, p. 5.

Prior to filing the adversary complaint, the Trustee's counsel reached out to Mr. Drexel on at least three separate occasions, advised him of the Trustee's position with regard to the loans, and requested that either he or the Defendant produce records indicating the Defendant's finances. *Meisel Cert. I*, pp. 2-4, Exhibits B-C. On or about August 12, 2005, the Trustee's counsel contacted Mr. Drexel and reminded him of the Defendant's failure to plead or otherwise respond to the complaint. *Id.* at 4-5. Separate requests to enter default and default judgment against the Defendant were filed by the Trustee on September 16, 2005. Default judgment was entered against the Defendant on December 13, 2005 in the amount of $48,880.69 representing the aggregate amount of the alleged loans, $47,730.69, and costs.

By letter addressed to Mr. Drexel and copied to the Defendant, dated January 24, 2006, the Trustee's counsel inquired whether Mr. Drexel still represented the Defendant and whether the Defendant would voluntarily pay the judgment. *Id.* at 5, Exhibit H. Multiple conversations between Mr. Drexel and the Trustee's counsel ensued. At no time did Mr. Drexel mention that he did not represent the Defendant, or that he was not authorized to accept service on the Defendant's behalf. *Id.* at 5-6.

The Defendant alleges that he did not learn of the adversary complaint or the entry of default judgment until he received the Trustee's letter of January 24, 2006, almost eight months after the complaint was filed. *Certification of Jeffrey Reckling in Support of the Defendant's Motion to Reopen the Case and Vacate Default Judgment*, pp. 2-3 (hereinafter "*Reckling Cert.*"). The Defendant states that at no time did he authorize Mr. Drexel to accept service on his behalf. *Id.* at 2. Although Mr. Drexel "advised" the Trustee's counsel that the summons and complaint be sent to him, Mr. Drexel states that the Defendant never authorized him to accept service of process. *Drexel Cert.*, p. 5. After learning of the judgment, the Defendant telephoned Mr. Drexel, who was attempting to consensually resolve this matter. *Reckling Cert.*, p. 3. On May 24, 2006, almost four months after learning of the judgment, the Defendant retained counsel and filed the instant motion. The Defendant alleges that he "never received any loans from the Debtor." *Id.* at 3.

*Legal Analysis:*

Service issues in adversary proceedings are governed by Federal Rule of Bankruptcy Procedure 7004. Absent an exception not relevant here, Rule 7004 incorporates Federal Rule of Civil Procedure 4(e)(2), which states:

> [u]nless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other

Page 5
January 17, 2007

>than an infant or an incompetent person, may be effected in any judicial district of the United States:
>
>. . .
>
>>(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e)(2).

In addition, Rule 7004 provides that service:
>is also sufficient if a copy of the summons and complaint is mailed to an agent of such defendant authorized by appointment or by law to receive service of process, at the agent's dwelling house or usual place of abode or at the place where the agent regularly carries on a business or profession and, if the authorization so requires, by mailing also a copy of the summons and complaint to the defendant as provided in this subdivision.

FED. R. BANKR. P. 7004(b)(8). Clearly, an agent may receive personal service of process at his place of business on behalf of his client. *See also* FED. R. BANKR. P. 7005; FED. R. CIV. P. 5(b). In addition, the defendant need not be served with process unless the authorization so requires.

The issue here is whether Mr. Drexel was authorized by law to accept service on behalf of the Defendant. Pursuant to Rule 7004(f), a bankruptcy court may exercise personal jurisdiction over a defendant when three requirements are satisfied: "(1) service of process has been made in accordance with Bankruptcy Rule 7004 or Civil Rule 4; (2) the court has subject matter jurisdiction under section 1334 of the Code; and (3) exercise of jurisdiction is consistent with the Constitution and laws of the United States." 10 COLLIER ON BANKRUPTCY ¶ 7004.07 (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev.).

>An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457 (1940); *Grannis v. Ordean*, 234 U.S. 385 (1914); *Priest v. Trs. of the Town of Las Vegas, N.M.*, 232 U.S. 604 (1914); *Roller v. Holly*, 176 U.S.

Page 6
January 17, 2007

> 398 (1900). The notice must be of such nature as reasonably (sic) to convey the required information, *see generally Grannis*, and it must afford a reasonable time for those interested to make their appearance, *see generally Roller*, *but cf. Goodrich v. Ferris*, 214 U.S. 71 (1909). But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' *Am. Land Co. v. Zeiss*, 219 U.S. 47, 67 (1911); *see Blinn v. Nelson*, 222 U.S. 1, 7 (1911).
>
> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might (sic) reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected (sic), *compare Hess v. Pawloski*, 274 U.S. 352 (1927), *with Wuchter v. Pizzutti*, 276 U.S. 13 (1928). . . .

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

As Judge Stern of this Court has previously explained, "in extraordinary circumstances courts will approve service of initial process on counsel not expressly authorized as agent for service, implying agent status from counsel's representation . . . of the party to be served." *The Muralo Co., Inc. v. All Defendants Listed on Exhibits A Through D to Complaint (In re The Muralo Co., Inc.)*, 295 B.R. 512, 518 (Bankr. D.N.J. 2003).

Judge Stern's opinion in *In re The Muralo Co., Inc.* is instructive of the framework for determining implied agency here. He states that:

> [a]n attorney, solely by reason of his capacity as an attorney, does not thereby become his client's agent authorized by 'appointment . . . to receive service of process.' Nor is the fact that an attorney represents his client in a completely unrelated litigation sufficient to establish the requisite authority. What is necessary is that it appear that the attorney was authorized either expressly or impliedly, to receive service of process for his client. *And if such agency is to be implied, it must be implied from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer.*

Page 7
January 17, 2007

*Id.* (citation omitted) (emphasis added).

An attorney may be found to have implied authority to receive service of process in an adversary proceeding after providing active representation in a related bankruptcy case. *Id.* at 519 (citing *Ms. Interpret v. Rawe Druck-Und Veredlungs-GmbH d/b/a Rawe (In re Ms. Interpret)*, 222 B.R. 409, 416 (Bankr. S.D.N.Y. 1998); *Luedke v. Delta Air Lines, Inc. (In re Pan Am Corp.)*, 159 B.R. 385, 394-95 (S.D.N.Y. 1993); *Reisman v. First N.Y. Bank for Bus. (In re Reisman)*, 139 B.R. 797, 801 (Bankr. S.D.N.Y. 1992)). "The depth and breadth of authority which the client intended to confer on the attorney, and the degree of autonomy with which the attorney has acted in the related case, have been viewed as significant factors in the implied agency determination." *In re The Muralo Co., Inc.*, 295 B.R. at 519 (citing *see In re Ms. Interpret*, 222 B.R. at 417).

Collier's supports both of these propositions by citing a single case. 10 COLLIER ON BANKRUPTCY ¶ 7004.03 (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev.) (citing *Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F.3d 1077, 1082 (9th Cir. 2004) ("There appears to be only one circuit court case to address head-on the issue of implied authority to accept service of process. In [*Ziegler*], the Federal Circuit stated that 'an agent's authority to accept service may be implied in fact.' *U.S. v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997). In order to find implied authority to accept service of process . . . 'the record must show that the attorney exercised authority beyond the attorney-client relationship, including the power to accept service.'" *Id.*)).

In the instant adversary proceeding, Mr. Drexel served, at all times, as the intermediary between the Trustee's counsel and the Defendant. All communications from the Trustee's counsel were directed to and accepted by Mr. Drexel. Mr. Drexel agreed to appear on behalf of the Defendant, in his capacity as a principal of the Debtor, at a Rule 2004 examination. During that inquiry, the Defendant agreed to investigate entries in the Debtor's financial statements indicating loans to him. However, it was Mr. Drexel who investigated those entries and responded to the Trustee's counsel on the Defendant's behalf. The Trustee's counsel had numerous communications with Mr. Drexel, both prior to and during this adversary proceeding, in an effort to resolve the Trustee's claims against the Defendant. Most significantly, Mr. Drexel agreed to accept service on behalf of the Defendant.

It is clear that Mr. Drexel was acting, at a minimum, on the Defendant's behalf with regard to all of the aforementioned circumstances. The scene, as portrayed to the Trustee's counsel by Mr. Drexel and the Defendant, was one involving an attorney-client relationship. The first instance in which Mr. Drexel mentioned that he was not authorized to accept service was in his instant certification to the Court. Despite repeated communications with the Trustee's counsel, this position was never asserted. Equally, Mr. Drexel never mentioned that the Defendant had not retained his services for purposes of this complaint. Instead, he acted in the role of counsel by communicating, attempting to settle, and appearing at a Rule 2004 deposition on the Defendant's behalf with regard to the loans at issue. Finally, the Defendant never informed the Trustee's counsel, even at the Rule 2004 examination, that Mr. Drexel was not his legal counsel.

Page 8
January 17, 2007

Subsequent to the entry of default judgment, the Trustee's counsel inquired by letter whether Mr. Drexel still represented the Defendant. It is significant that neither Mr. Drexel nor the Defendant responded to or refuted the alleged attorney-client relationship, despite the fact that both received the letter. Instead, the Defendant relied on Mr. Drexel to persuade the Trustee to voluntarily withdraw the default judgment. Only after Mr. Drexel's attempts failed did the Defendant retain his current counsel to file the instant motion, almost four months after learning of the default judgment.

This Court holds that the totality of these circumstances is sufficient, at the very least, to create an implied attorney-client relationship. Therefore, this Court finds that the Trustee's counsel effected valid substituted service on Mr. Drexel pursuant to Federal Rule of Bankruptcy Procedure 7004.

In the alternative, the Defendant argues that the default judgment should be vacated pursuant to Federal Rule of Civil Procedure 60(b)(1) on the ground of excusable neglect, given his alleged meritorious defense.

Federal Rule of Civil Procedure 60 is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 9024. "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . ." FED. R. CIV. P. 60(b)(1).

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (seminal case describing the excusable neglect standard under Federal Rule of Bankruptcy Procedure 9006). The Third Circuit Court of Appeals has extended the excusable neglect standard set forth in *Pioneer* to motions made pursuant to Federal Rule of Civil Procedure 60(b)(1). *George Harms Constr. Co., Inc. v. Chao*, 371 F.3d 156, 163-64 (3d Cir. 2004).

Clients may be held accountable for the acts and omissions of their attorneys. *Pioneer*, 507 U.S. at 394-97. "Consequently, in [assessing a claim of excusable neglect under Rule 60(b)(1)], the proper focus is upon whether the neglect of [the clients] *and their counsel* was excusable." *Id.* at 397 (emphasis in original). The underlying premise is that in a system of representative litigation,

Page 9
January 17, 2007

a client is considered to have notice of all facts known by his attorney. *Id.* at 396-97. "[I]t is the simple, everyday error -- an unnoticed typo, a mistaken diary entry -- which is virtually inevitable for every lawyer regardless of the level of competence or diligence he brings to a case" that constitutes excusable neglect under Rule 60(b)(1). *Tamarkin v. Wells (In re Wells)*, 87 B.R. 862, 865 (Bankr. E.D. Pa. 1988) (citation omitted). Excusable neglect is the exception - not the rule. The Court must honor the finality of judgments by refusing to find an exception each time hardship is visited by virtue of an attorney's action or inaction.

Here, counsel's conduct does not constitute excusable neglect. Mr. Drexel agreed to accept service on behalf of the Defendant. As a professional courtesy, the Trustee's counsel reminded Mr. Drexel on several occasions of the Defendant's failure to file a responsive pleading prior to moving for entry of default and default judgment. The Defendant asserts that he only learned of the instant complaint over six months after it was filed, and that it was the Trustee's counsel who informed the Defendant of the existence of the complaint and default judgment by virtue of a letter dated January 24, 2006. However, this is not to say that Mr. Drexel was dormant. The record amply reflects that he attempted to settle the Trustee's claims against the Defendant as early as 2004. In addition, he agreed to represent the Defendant at a Rule 2004 examination. He also attempted to negotiate a voluntary withdrawal of the default judgment with the Trustee's counsel. It was only after his failed attempts that the Defendant filed the instant motion to vacate the default judgment. This Court will not prejudice the Trustee by disturbing the finality of his judgment and further delay closure in this matter.

Assuming, *arguendo*, that the circumstances *sub judice* constitute excusable neglect, the Defendant also failed to show the applicable factors weigh in favor of setting aside the judgment. In its discretionary determination of whether to set aside an entry of default or default judgment pursuant to Federal Rules of Civil Procedure 55(c) or 60(b)(1), this Court must consider three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (citing *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983); *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656 (3d Cir. 1982); *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)).

"The showing of a meritorious defense is accomplished when 'allegations of [the] defendant's answer, if established [at] trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951) (other citation omitted)). A defendant has the burden of showing with some specificity the basis for his defense. *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 192). This burden is not met by a conclusory assertion. *Harad*, 839 F.2d at 982. The underpinning is that in order to set aside judgment, a court must assess the merits of the defense to determine whether it operates as a complete bar to liability. *Id.* (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 192).

Case 05-01902-DHS    Doc 17    Filed 01/17/07    Entered 01/17/07 16:33:47    Desc Main
                    Document      Page 10 of 10

Page 10
January 17, 2007

      Here, the Defendant alleges that he has "a meritorious defense, since [he] never received any loans from the Debtor and specifically [he] did not receive loans of either $13,650 or $34,080.69 as alleged in the Complaint." *Reckling Cert.*, p. 3. This conclusory allegation, without any supporting evidence, falls short of the Defendant's burden to show a meritorious defense. *See Harad*, 839 F.2d at 982. As an example, the Defendant (principal of the Debtor) could have produced the financial records of the Debtor, or could have offered his personal financial statements or bank records to prove that no money was transferred to him. This type of proffer is conspicuously absent from the Defendant's case. Therefore, the factor analysis weighs *in toto* against the Defendant.

*Conclusion*

      For the reasons set forth above, the Defendant's motion to reopen the adversary proceeding and to vacate the entries of default and default judgment is denied. An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

                                      Very truly yours,

                                      /s/ Donald H. Steckroth

                                      DONALD H. STECKROTH
                                      UNITED STATES BANKRUPTCY JUDGE

Enclosure